IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBALSANTAFE DRILLING COMPANY,<br><br>    Plaintiff,<br><br>  v.<br><br>INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA; et al.,<br><br>    Defendants.<br>_____/<br>INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,<br><br>    Counter-Claimant and<br>    Cross-Claimant,<br><br>  v.<br><br>GLOBALSANTAFE DRILLING COMPANY; et al.,<br><br>    Counter-Defendants and<br>    Cross-Defendants.<br>_____/ | No. C 05-4411 CW<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND |

    Plaintiff GlobalSantaFe Drilling Co. moves to remand this removed action to State court.  Removing Cross-Defendants The

1  Mutual Insurance Association Gard (Gard), Associated Electrical and
2  Gas Insurance Services Limited (AEGIS) and The United Kingdom
3  Mutual Steamship Assurance Association (Bermuda) Ltd. (UK Club)
4  (collectively, Removing Defendants) oppose this motion.  Defendant
5  The Insurance Company of the State of Pennsylvania takes no
6  position on whether the Court should exercise its discretion and
7  remand this litigation to State court, but it objects to Removing
8  Defendants' assertion that its claims against Removing Defendants
9  are subject to arbitration.  The hearing scheduled for January 6,
10 2006, is vacated.  Having considered all of the papers filed by the
11 parties, the Court grants Plaintiff's motion and remands this case
12 to State court.

## BACKGROUND

14     William Lightbown died of mesothelioma in 2002.  He was an
15 employee of Plaintiff and had worked on Plaintiff's vessels from
16 1969 through 2001.  A year after his death, his widow brought a
17 wrongful death action against Plaintiff and others, alleging that
18 her husband was exposed to, and ultimately killed by, asbestos
19 while working on Plaintiff's vessels.  In October, 2004, Plaintiff
20 settled the suit for an undisclosed, but substantial, amount of
21 money.

22     Various insurers had issued liability insurance coverage
23 policies to Plaintiff that were in effect during the years that
24 Plaintiff employed Mr. Lightbown.  Three of these policies
25 contained foreign arbitration agreements.  Plaintiff's contract
26 with Gard included a Norwegian choice of law clause and an
27 agreement to arbitrate any disputes in Oslo, Norway.  Plaintiff's

2

1  contract with AEGIS and UK Club had English choice of law clauses
2  with agreements to arbitrate any disputes in London.
3       Although there were numerous policies, Plaintiff selected the
4  policy issued by Defendant, and demanded full indemnity under that
5  policy alone.  Defendant refused to indemnify Plaintiff fully,
6  arguing that, under California law, Plaintiff cannot obtain the
7  entire amount of the settlement from Defendant.  Under a complete
8  reservation of rights, Defendant has paid Plaintiff only a share of
9  the settlement.
10      Plaintiff filed suit against Defendant and the other insurers
11 in State Court.  Plaintiff brought claims for breach of contract
12 and insurance bad faith against Defendant and sought declaratory
13 relief against the other insurers, including Removing Defendants,
14 who had provided liability coverage to Plaintiff between 1969 and
15 2002.  Plaintiff sought a declaration that if it is not entitled to
16 be fully indemnified by Defendant, then the remaining insurer
17 Defendants are obliged to indemnify Plaintiff for any remaining
18 balance.
19      On October 28, 2005, the Removing Defendants removed this
20 action to this Court.  The notice of removal states that the Court
21 has original jurisdiction of this action under 9 U.S.C. § 203 and
22 28 U.S.C. § 1331, and that it may be removed to this Court pursuant
23 to 9 U.S.C. § 205, because it involves an arbitration agreement
24 subject to the Convention on the Recognition and Enforcement of
25 Foreign Arbitral Awards.  All of the Defendants in this action
26 consented to the removal.
27      Five days after Removing Defendants removed this action,

3

1  Plaintiff voluntarily dismissed all claims against Removing
2  Defendants.  That same day, Defendant brought counter-claims for
3  declaratory relief against Plaintiff and cross-claims for equitable
4  contribution and equitable subrogation against the other
5  Defendants, including Removing Defendants.

## DISCUSSION

7  Removal from State court is proper where the federal court has
8  original jurisdiction over the plaintiff's claim.  28 U.S.C.
9  § 1441(a).  Title 9 U.S.C. § 203 provides that district courts have
10 original jurisdiction over an action falling under the Convention
11 on the Recognition and Enforcement of Foreign Arbitral Awards.
12 Section 205 provides for the removal of such actions, stating that
13 where the subject matter of an action "relates to an arbitration
14 agreement or award falling under the Convention," the defendants
15 may remove the action to the district court.  9 U.S.C. § 205.

16 Plaintiff does not argue that removal was improper in this
17 case.  Rather, Plaintiff argues that, because it dismissed all
18 claims against Removing Defendants, there is no longer any basis
19 for federal jurisdiction, and the Court should exercise its
20 discretion to remand the case to the Superior Court for the City
21 and County of San Francisco.  Plaintiff notes that, besides this
22 motion, the Court has not addressed the merits of any issue in this
23 case.  The interests of judicial economy, fairness and comity,
24 Plaintiff asserts, dictate that this case, which now consists of
25 only State law claims, should be returned to State court.

26 Removing Defendants do not address directly Plaintiff's
27 arguments regarding whether the Court should exercise its

4

discretion to remand the remaining State law claims to State court. They do not address relevant cases cited by Plaintiffs, such as Acri v. Varian Associates, Inc., 114 F.3d 999 (9th Cir. 1997), where the Ninth Circuit stated,

> The Supreme Court has stated, and we have often repeated, that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims."

114 F.3d at 1001 (quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  Instead, Removing Defendants argue that, because subject matter jurisdiction existed at the time of removal, and because subject matter jurisdiction still exists, the Court has no discretion to remand in this case.  The Court first addresses Removing Defendants' argument that subject matter jurisdiction existed at the time of removal and then addresses their arguments regarding current subject matter jurisdiction.

I.   Subject Matter Jurisdiction at Time of Removal

All parties agree that removal was proper.  But Removing Defendants contend that because removal was proper and subject matter jurisdiction existed at the time of removal, then Plaintiff's argument for remand must fail.  Their reliance on Sparta Surgical Corporation v. National Association of Securities Dealers, 159 F.3d 1209 (9th Cir. 1998), to support this contention is misplaced.

5

In Sparta, the plaintiff filed suit in State court based upon alleged violations of security exchange rules. After the defendants removed the case, the plaintiff amended its complaint and deleted most references to the exchange rules. The Ninth Circuit held that the district court had subject matter jurisdiction under the Securities Exchange Act, 15 U.S.C. § 78aa, which confers exclusive jurisdiction upon the federal courts for suits brought to enforce the Securities Exchange Act and the rules and regulations promulgated thereunder. 159 F.3d at 1212. The amended complaint was of "no moment" to the court because subject matter jurisdiction must be decided at the time of removal without reference to subsequent amendments. Id.

Sparta does not hold that a court cannot remand a case that was properly removed even if the plaintiffs amend their complaint, or, in this case, dismiss certain defendants. The plaintiff in Sparta argued that the district court did not have subject matter jurisdiction and thus removal was improper, an issue not contested in this case.

Removing Defendants cite no case holding that if subject matter existed at the time of removal, then the case cannot be remanded. And they do not address Baddie v. Berkeley Farms, Inc., 64 F.3d 487 (9th Cir. 1995), discussed by Plaintiffs in their moving papers. In Baddie, the plaintiffs filed in State court and the defendants removed. The Ninth Circuit found that in first

6

choosing State court and then, after removal, dismissing their federal claims and moving for remand with all due speed, the plaintiffs did not engage in manipulative pleading practices but, rather, made a legitimate tactical decision. The court explained, "A plaintiff is entitled to file both state and federal causes of action in state court. The defendant is entitled to remove. The plaintiff is entitled to settle certain claims or dismiss them with leave of the court. The district court has discretion to grant or deny remand." 64 F.3d at 490.

Thus, the Court finds that Removing Defendants' argument that the Court has no discretion to remand this case because removal was proper is without merit.

II. Subject Matter Jurisdiction Under 28 U.S.C. § 1333(1)

Removing Defendants next argue that, although they did not remove the case on this basis, the Court had jurisdiction at the time of removal because this case involves disputes over marine insurance contract rights and obligations, and thus the Court cannot remand this case. They cite no case, however, to support this argument. Nor do they disclose the relevant Ninth Circuit authority that discredits their argument.

As the Ninth Circuit explains,

> 28 U.S.C. § 1333(1) provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in

7

> all cases all other remedies to which they are otherwise entitled." The latter clause, known as the "savings to suitors" clause, "leave[s] state courts 'competent' to adjudicate maritime causes of action in proceedings 'in personam,' that is, where the defendant is a person, not a ship or some other instrument of navigation."

Ghotra by Ghotra v. Bandila Shipping, Inc., 113 F.3d 1050, 1054 (9th Cir. 1997) (quoting Madruga v. Superior Court, 346 U.S. 556, 560-61 (1954)). The Ninth Circuit has further noted "that saving clause claims brought in state court are not removable under 28 U.S.C. § 1441 absent some other jurisdictional basis, such as diversity or federal question jurisdiction." Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1069 (9th Cir. 2001) (citing Romero v. Int'l Terminal Operating Co., 358 U.S. 354, 371 (1959); Alleman v. Bunge Corp., 756 F.2d 344, 345-46 (5th Cir. 1984)).

Thus, while the Court has subject matter jurisdiction over this case, removal under § 1333 would not have been proper. Triton Container Int'l Ltd. v. Institute of London Underwriters, 1998 WL 750941 (N.D. Cal. April 1, 1998). Removing Defendants' argument that the Court has no discretion to remand this case because it involves marine insurance contracts is without merit.

III.  Subject Matter Under 9 U.S.C. §§ 203 and 205

Removing Defendants' final argument is that the Court has no discretion to remand this case because Defendant's cross-claims against Removing Defendants raise the same federal subject matter jurisdiction which was the basis for removal in the first place,

8

i.e., 9 U.S.C. §§ 203 and 205.  Thus, according to Removing Defendants, it is irrelevant that Plaintiff dismissed its claims that involved foreign arbitration agreements against Removing Defendants.  This is the argument that Defendant responds to, arguing that because it was not a party to any arbitration agreements with Removing Defendants, it does not have to arbitrate any of its claims against Removing Defendants based on Plaintiff's arbitration agreements with Removing Defendants.

   A.   "Relates to an arbitration agreement"

   Removing Defendants read 9 U.S.C. § 205 broadly and cite Beiser v. Weyler, 284 F.3d 665 (5th Cir. 2002), in support of their interpretation of § 205.  Although Plaintiff and Defendant address Beiser as it relates to whether Defendant's cross claims against Removing Defendants are subject to arbitration, neither Plaintiff nor Defendant addresses the Beiser court's interpretation of § 205.  As noted above, § 205 provides for the removal of a pending action that "relates to an arbitration agreement" under the Convention.  In Beiser, the court found that "whenever an arbitration agreement falling under the Convention could conceivably affect the outcome of the plaintiff's case, the agreement 'relates to' to the plaintiff's suit."  284 F.3d at 669.  Removing Defendants argue that their foreign arbitration agreements with Plaintiff could conceivably affect the outcome of Defendant's cross-claims against them.

9

The Beiser court's interpretation of "relates to" is not binding precedent, and it is distinguishable. As noted in AtGames Holdings Ltd. v. Radica Games Ltd., 394 F. Supp. 2d 1252, 1255 n.1 (C.D. Cal. 2005), the Ninth Circuit has not addressed this issue. The court in AtGames, however, found that the "plain meaning of § 205 is clear that a state court action is removable if (1) the parties to the action have entered into an arbitration agreement, and (2) the action relates to the agreement." 394 F. Supp. 2d at 1255. The court noted that the Supreme Court has stated that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Id. (quoting AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 647 (1986)). And the AtGames court further noted that its decision was consistent with Beiser, because in Beiser the plaintiff, who was the sole director and employee of a corporation, had signed the arbitration agreement on behalf of the company and, as the Fifth Circuit recognized, was arguably the alter ego of the corporation. Id. at 1256.

The Court finds that the interpretation of § 205, explained in AtGames, that requires a party to have entered into an arbitration agreement, is consistent with established Supreme Court precedent that non-parties to an arbitration agreement cannot be compelled to arbitrate their claims. See, e.g., AT&T Techs., 475 U.S. at 647. Thus, unless Defendant, who is not a party to any arbitration

10

agreements with Removing Defendants, is required to arbitrate his cross-claims with Removing Defendants, the cross-claims are not "related to" Plaintiff's foreign arbitration agreement with Removing Defendants.

B.  Defendant's Cross-Claims and Arbitration

Plaintiff and Defendant both argue that Defendant is not required to arbitrate its cross-claims against Removing Defendants. They both note that Defendant was not a party to any arbitration agreement with Removing Defendants.  Plaintiff further notes the language of the arbitration clauses: the Gard clause explicitly applies only to "disputes between the Association [Gard] and a Member or an Assured who is not a Member, or a former Member or a former Assured who was not a Member"; the UK Club clause explicitly applies to disputes arising between an Owner of a Vessel and the Association [UK Club]; and the AEGIS clause applies only to disputes between "a Member and the Club [AEGIS]."

Plaintiff and Defendant both cite cases establishing that, with very limited exceptions, none of which are applicable to this case, the Federal Arbitration Act, which favors private arbitration of disputes, does not apply to those who are not themselves parties to an arbitration agreement.  See, e.g., Volt Info. Sciences, Inc. v. Bd. of Trustees, 489 U.S. 468, 478 (1989) ("we have recognized that the FAA does not require parties to arbitrate when they have not agreed to do so").

11

As the Supreme Court has directed, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.  The court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'"  <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 626 (1985) (quoting <u>Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983)).  That body of law counsels "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  <u>Id</u>. (quoting <u>Moses H. Cone Memorial Hosp.</u>, 460 U.S. at 24-25).  But, "as with any other contract, the parties' intentions control."  <u>Id</u>. And, here, even generously construing those intentions as to the issues of arbitrability, the Court finds that Defendant did not agree to arbitrate its cross-claims against Removing Defendants.

Removing Defendants cite <u>Mitsubishi Motors</u> for its language regarding the strong federal policy favoring arbitration; but they do not address the Supreme Court's directions in <u>Mitsubishi Motors</u> regarding the first task of a court in determining whether to compel arbitration.  Instead, they attack Defendant's argument that it is not bound by arbitration agreements that it did not sign.

12

Removing Defendants argue that a non-signatory seeking the benefit of an arbitration agreement can be compelled to arbitrate disputes in accordance with the terms of the arbitration contract.  But the cases Removing Defendants cite in support are distinguishable.  For example, in Letizia v. Prudential Bache Securities, Inc., 802 F.2d 1185 (9th Cir. 1986), employees of a brokerage firm sought to compel arbitration, even though the customer agreement containing the arbitration provision was signed by the plaintiff and not by the employees.  The court concluded that because the brokerage firm indicated its intention to protect its employees through its customer agreement with the plaintiff, and the employees' allegedly wrongful acts related to their handling of the plaintiff's account, the arbitration clause was applicable to the employees.  802 F.2d at 1188.  There, the employees were seeking to enforce an agreement signed by the plaintiff, whereas here Removing Defendants seek to bind Defendant  to an arbitration agreement it never joined in or agreed to in any way.  Furthermore, as Plaintiff notes, Defendant is not a third-party beneficiary of any policy between Plaintiff and Removing Defendants and is not seeking any benefits from Removing Defendants as an unnamed insured; instead, Defendant asserts that it has provided benefits to the Removing Defendants by advancing funds to Plaintiff that are ultimately Removing Defendants' responsibility to pay.

     Removing Defendants provide no case that would allow the Court

13

to compel arbitration against Defendant, even though under Defendant's equitable subrogation claim, it does "stand in the shoes" of Plaintiff, the insured, who would be compelled to arbitrate claims against Removing Defendants.  See Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1279, 1292 (1998). The estoppel exception that could allow non-signatories to a contract to compel arbitration is inapplicable, because here it is a signatory to a contract seeking to compel arbitration against a non-signatory.  See, e.g., MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942 (11th Cir. 1999).  Nor is there a preexisting relationship between Defendant and Removing Defendants, or Defendant and Plaintiff, that would allow Removing Defendants to bind Defendant to an arbitration agreement without its permission.  In sum, Defendant did not agree to and thus cannot be compelled to arbitrate its cross-claims against Removing Defendants.

Because the Court finds that Defendant's cross-claims are not "related to" the foreign arbitration agreements and thus there is not current federal subject matter jurisdiction, the Court now addresses whether it should exercise its discretion and remand the remaining claims to State court.

III. Discretionary Remand

As noted above, the Supreme Court has stated that in the usual case in which all federal law claims are eliminated before trial, the balance of factors will point toward declining to exercise

14

jurisdiction over the remaining State law claims. Carnegie-Mellon, 484 U.S. at 350 n.7. Factors the Court should consider when determining whether to remand such a case to State court include judicial economy, convenience, fairness, comity and whether the plaintiff has engaged in manipulative tactics. Id.; Acri, 114 F.3d at 1001.

In Millar v. Bay Area Rapid Transit District, 236 F. Supp. 2d 1110 (N.D. Cal. 2002), the court found that the factor of judicial economy weighed in favor of remand when the court had "expended only modest efforts in supervising this case. There were no motions of any kind filed by either plaintiff or defendant prior to motions" regarding remand. 236 F. Supp. 2d. at 1119. The court's involvement in that case was limited to holding two case management conferences and issuing a pre-trial order. Id. Here, Plaintiff notes, there has been no case management conference, no motions have been filed other than this motion to remand and less than three weeks elapsed between the removal of the case and the filing of the remand motion. The Court finds that the factor of judicial economy weighs in favor of remand.

The factor of comity (respect for our sister State institutions) also weighs in favor of remand; having dismissed claims against Removing Defendants, Plaintiff now proceeds exclusively on its State law claims. See id. at 1120 (noting it is preferable as a matter of comity "for state court judges to apply

15

state law to plaintiff's state-law claims"). Furthermore, Plaintiff notes that Defendant's primary defense is based on California Insurance Code § 1996. Plaintiff contends that this is a little known section of California's Insurance Code, and a search on Westlaw confirms Plaintiff's contention: § 1996 has only been cited in one case, a case from 1899 that was reversed two years later. Thus, the case potentially raises "cutting edge issues with potentially far-reaching implications for many other California litigants. In these circumstance, it is unusually important to permit California courts to address these significant questions of California law in the first instance." Id. at 1114.

The factors of convenience and fairness, as in Millar, "cut markedly in neither direction." Id. at 1120. Given San Francisco's close proximity with Oakland, both forums are equally convenient to the parties. As Plaintiff notes, the federal court in Oakland is less than ten miles from the State court in San Francisco. And a State forum will provide just as fair a proceeding as a federal forum. Id.

Finally, as noted above, the Ninth Circuit has found that plaintiffs, in a similar situation, did not engage in manipulative conduct when the plaintiffs "dismissed their federal claims and moved for remand with all due speed after removal." See Baddie, 64 F.3d at 491.

Therefore, having considered all of the factors, the Court

16

determines that the factors weigh in favor of remand.

CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion to remand (Docket No. 11) and REMANDS this case to State court.

IT IS SO ORDERED.

Dated: 1/3/06



_____
CLAUDIA WILKEN
United States District Judge

17